DECISION AND JUDGMENT ENTRY
{¶ 1} Michael A. Ball appeals his convictions and sentences for two counts of unlawful sexual conduct with a minor and two counts of gross sexual imposition. First, Ball contends his convictions are against the weight of the evidence because the testimony of the state's witnesses presented at trial was vague, inconsistent, and unbelievable. The state presented evidence from several witnesses that generally showed that Ball supplied neighborhood girls with cigarettes in exchange for sexual favors. The jury heard testimony from several alleged victims, including the three victims serving as the basis for Ball's convictions, in which they described specific instances of sexual misconduct involving Ball. While there were discrepancies and inconsistencies in their testimony, some of the victims were testifying about sexual activity that had allegedly occurred several years ago when they were children. It is the jury's *Page 2 
role, not ours, to judge their credibility and resolve any inconsistencies in their testimony. Because the jury could properly believe the victims' testimony, we cannot conclude the jury lost its way. We conclude the state presented substantial evidence from which the jury could have reasonably concluded, beyond a reasonable doubt, that Ball engaged in unlawful sexual activity with three young females.
 {¶ 2} Ball also contends that the trial court erred in ordering his sentences to run consecutively in violation of his constitution rights and the United States Supreme Court's decision in Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. He also asserts that the severance remedy applied by the Ohio Supreme Court in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates due process and ex post facto provisions of the United States Constitution. Having previously rejected similar arguments, we reject them again here on the same basis: forfeiture and the merits. State v.Henry, Pickaway App. No. 06CA8, 2006-Ohio-6942; State v. Grimes, Washington App. No. 06CA17, 2006-Ohio-6360; State v. Thompson, Washington App. Nos. 06CA43 and 06CA50, 2007-Ohio-2724. Moreover, based upon the Supreme Court of Ohio's recent decision in State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, we reject his contentions that the trial court committed plain error by applyingFoster to his sentencing.
 {¶ 3} Next, Ball contends that the trial court erred when it sentenced him to separate prison terms for his convictions for unlawful sexual conduct with a minor and gross sexual imposition for conduct involving R. W. because the *Page 3 
crimes were allied offense of similar import that should have been merged. Ball also contends that his trial counsel was ineffective for failing to argue that these convictions were allied offenses. Comparing the elements of unlawful sexual conduct with a minor under R.C.2907.04(A) and gross sexual imposition under R.C. 2907.05(A)(1) in the abstract, each offense requires proof of an element that the other does not. Accordingly, they cannot be allied offenses of similar import, and trial counsel was not deficient in failing to make that argument.
 {¶ 4} Finally, Ball contends that his trial counsel was ineffective when he failed to object to hearsay evidence from Jessica Lyons and Ron Dane, failed to present a defense, and failed to present any argument in mitigation of Ball's sentence. Jessica Lyons testified that J. B. said she and L. C. had performed oral sex on Ball in return for cigarettes. However, both J. B. and L.C. also testified about the sexual activity. Thus, Ball cannot show that but for counsel's failure to object to Jessica's testimony, the jury would not have convicted Ball. Moreover, the testimony of an investigator with the prosecutor's office concerning statements J. B. allegedly made to Jessica was very general in nature and offered to show how the investigation started, i.e., Jessica told J. B.'s mother, who in turn notified the police; his testimony was not intended to demonstrate the truth of J. B.'s allegations. Furthermore, the record fails to identify any witnesses who could have provided favorable testimony in Ball's defense. Thus, he cannot show he was prejudiced by trial counsel's decision not to call any witnesses. Finally, Ball fails to identify any additional arguments trial counsel could have *Page 4 
made at his sentencing hearing and cannot demonstrate that but for counsel's performance he would have received a more lenient sentence.
 I. Facts {¶ 5} In 2005, a Hocking County grand jury indicted Ball on one count of rape, two counts of gross sexual imposition, one count of unlawful sexual conduct with a minor, and four counts of contributing to the delinquency of a minor, under case number 05CR146. In 2006, Ball was re-indicted on the original charges and indicted on several new charges under case number 06CR092. In this subsequent indictment, Ball was charged with four counts of rape, eight counts of gross sexual imposition, two counts of unlawful sexual conduct with a minor, and seven counts of contributing to the delinquency of a minor. The indictments alleged that Ball engaged in numerous sexual acts, predominately fellatio, with several minor female victims from 1993-2004. Ball pled not guilty, and the cases were merged for purposes of trial. The matter proceeded to a jury trial, which produced the following evidence.
 {¶ 6} S. S. testified that she grew up in the same neighborhood in Logan, Ohio, where Ball lived. S. S. stated that Ball would work on his trucks in his garage and that she and her friend, E. D., would hang out with him because he would give them cigarettes. Around 1993, when S. S. was 10 years old and Ball was in his early twenties, Ball began giving her cigarettes in exchange for sexual favors. The conduct continued until she was about 14 years old, when she moved out of the neighborhood. S. S. testified about two particular incidents. On one occasion, when she was approximately 11 or 12 years old, she was *Page 5 
performing fellatio on Ball in his truck inside his garage and E. D. walked in on them. On another occasion, she performed fellatio on Ball in his truck on a country road.
 {¶ 7} E. D. testified that she and S. S. would hang out with Ball in his garage, and he would give them cigarettes. E. D. testified about one occasion where she was alone with him in his car inside his garage. She stated that she was approximately 10 or 11 years old, and she thought he was 20 years old. She had her head in his lap with her hand was around her head, and he took his penis out of his pants and placed it on her hand. She got "grossed out" and left. After reconsidering, she returned to the garage a short time later and observed S. S. performing oral sex on Ball. E. D. described another incident where she was with Ball in his garage and he had his hand up the back of her shirt "and stuff." She stated that her brother, Shawn Gierhart, walked into the garage and interrupted them. She testified that she moved away after her parents found out about the incident.
 {¶ 8} Shawn Gierhart testified that when he walked in on Ball and E. D. in Ball's garage, Ball had his arms wrapped around E. D. and was flirting with her. Shawn told E. D. to go home, and then beat up Ball because E. D. was only 10 years old. Jackie Bias, E. D.'s mother, testified that after learning about Ball and E. D., she went over to Ball's house and confronted him. At the time, Ball was wearing a ring that E. D. had given him on a chain around his neck.
 {¶ 9} J. B. testified that she and other kids would hang out with Ball in his garage almost everyday. They would listen to music and he would give them *Page 6 
cigarettes. At first he just gave them cigarettes for free, but then he started wanting oral sex in return. She described an incident that occurred during the week of the fair in August or September of 2004, when she was approximately 15 or 16 years old. She and L. C., who was about 11 or 12 years old at the time, had gone over to his garage for cigarettes. J. B. testified that she performed oral sex on Ball while L. C. was present, and then L. C. performed oral sex on him. She stated that she thought Ball was in his thirties at the time.
 {¶ 10} L. C. testified that she and J. B. would go over to Ball's garage and that he would always give them cigarettes. Other kids would also hang around his garage. L. C, who was 14 years old at the time of trial, testified about an incident that occurred a couple of years earlier when she was 12 years old. It was fair week, and she and J. B. went to Ball's garage to ask him for cigarettes. In return for the cigarettes, he wanted oral sex. She testified that J. B. performed oral sex on him, as Ball kissed L. C. and touched her breasts. Then L. C. gave him oral sex. According to L. C, she and J. B. gave him oral sex in return for cigarettes on a couple of occasions.
 {¶ 11} Jessica Lyons, J. B.'s cousin, testified that J. B. frequently hung out with Ball in his garage. After initially denying anything was going on between them, J. B. eventually told Jessica that Ball would give her cigarettes and that she had given Ball a "hand job" as a way of "working the cigarettes off." Later, J. B. confided in Jessica that Ball had made J. B. and L. C. give him a "blow job." Because L. C. was only 12 years old at the time, Jessica felt compelled to tell J. B.'s mother. *Page 7 
 {¶ 12} R. W. testified that she and her sister, F. W., met Ball in 1998 when they were living with their dad in the same neighborhood as Ball. Ball started coming over to their house and hanging out. R. W. testified about an incident that occurred about a month after they met when she was approximately 15 years old. They were sitting in his truck inside his garage talking. She testified that he started "rubbing me and stuff" and then asked her to give him oral sex. She testified that "at first I was like okay, and then I was like, no, I don't want to do that." He then pushed her head down toward his exposed penis. According to her testimony, she protested and tried to resist. She said, "no, no, don't, I don't — you know, I don't want to do this." She stated that his penis entered her mouth. Finally, she just told him no, and he let up and she left. She testified that his penis was in her mouth for sixty seconds, if that, and that he did not ejaculate. On cross-examination, however, R. W. was confronted with a written statement she had provided to investigators, where she stated that Ball's penis was in her mouth for approximately 10 to 15 minutes and that he "ejected."
 {¶ 13} F. W. testified that she met Ball when she was 12 or 13 years old. They became friends and started spending time together. She testified that he knew how old she was because she told him. She stated that they would hang out in his garage or he would come over to their house and that he would give her cigarettes and money. She testified that they eventually had sexual intercourse. At the time, she was approximately 13 to 14 years old, and he was approximately 26 years old. She testified that during the course of a year, they engaged in either vaginal intercourse or fellatio approximately 100 times. The *Page 8 
incidents occurred either in her home or in his garage. She stopped seeing him when she was 14 years old.
 {¶ 14} G. H. testified that she met Ball through her step sisters, R. W. and F. W., when she was 12 years old and that she would hang out with him occasionally. She testified that on two occasions Ball fondled her breasts and pinched them. One incident occurred at her mom's house and the other occurred in the back seat of her mom's car.
 {¶ 15} Jacob Holden, Brian Bartholomew, Curtis Nuzum, and Mandy Landis also testified on behalf of the state. They generally testified that they would hang out with Ball in his garage along with other kids from the neighborhood and that Ball would give out cigarettes. Finally, Ron Dane, an investigator for the prosecutor's office, testified about his investigation. The defense did not present any witnesses.
 {¶ 16} The jury found Ball guilty of one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), both felonies of the fourth degree, for conduct relating to R. W. The jury also found him guilty of one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree, for conduct relating to L. C. Finally, the jury found him guilty of one count of unlawful sexual conduct with a minor, in violation of R.C.2907.04(A)(B)(3), a felony of the third degree, for conduct relating to F. W. The jury was unable to reach a verdict on six other counts. The remaining counts were either nolled at the request of the prosecution or dismissed by the trial court. *Page 9 
 {¶ 17} The trial court sentenced Ball to four years on each of the felonies of the third degree and sixteen months on each of the felonies of the fourth degree, and ordered that all of the counts run consecutively.
 II. Assignments of Error {¶ 18} Ball raises the following assignments of error:
First Assignment of Error:
 The guilty verdicts were entered against the manifest weight of the evidence in violation of due process.
Second Assignment of Error:
 The trial Court erred to the prejudice of the Defendant when it sentenced him to consecutive prison terms based on facts not found by the jury or admitted by the Defendant.
Third Assignment of Error:
 The trial Court committed plain error when it sentenced Defendant to separate prison terms for unlawful sexual conduct with a minor and gross sexual imposition when the crimes are allied offenses of similar import that should have been merged.
Fourth Assignment of Error:
 Defendant was denied effective assistance of counsel due to the fact that counsel failed to argue that unlawful sexual conduct with a minor and gross sexual imposition were allied offenses of similar import.
Fifth Assignment of Error:
 Defendant was denied effective assistance of counsel when trial counsel failed to object to the introduction of hearsay evidence, failed to present a defense on behalf of the Defendant, and failed to present any argument in mitigation of Defendant's sentence.
 III. Manifest Weight of the Evidence {¶ 19} In his first assignment of error, Ball contends his convictions are against the weight of the evidence. *Page 10 
 {¶ 20} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Johnson (1991),58 Ohio St.3d 40, 41, 567 N.E.2d 266; State v. Eskridge (1988), 38 Ohio St.3d 56,526 N.E.2d 304, paragraph two of the syllabus.
 {¶ 21} The weight to be given evidence, and the credibility to be afforded testimony, are issues to be determined by the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329, 1998-Ohio-234,695 N.E.2d 763; State v. Frazier (1995), 73 Ohio St.3d 323, 339, 1995-Ohio-235,652 N.E.2d 1000. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461
N.E.2d1273.
 {¶ 22} Ball was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), and gross sexual imposition, in violation of R.C. 2907.05(A)(1) for his conduct involving R. W. He was also convicted of gross *Page 11 
sexual imposition, in violation of R.C. 2907.05(A)(4), for his conduct involving L. C. Finally, he was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A)(B)(3), for his conduct involving F. W.
 {¶ 23} R.C. 2907.04 sets forth the offense of unlawful sexual conduct with a minor and states:
 (A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
 (B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.
 (1) Except as otherwise provided in divisions (B)(2), (3), and (4) of this section, unlawful sexual conduct with a minor is a felony of the fourth degree.
 * * *
 (3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.
 {¶ 24} "Sexual conduct" includes vaginal intercourse between a male and female and fellatio. R.C. 2907.01 (A).
 {¶ 25} R.C. 2907.05 sets forth the offense of gross sexual imposition and states:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. *Page 12 
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 26} "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01 (B). While the mouth is not specifically among the body parts listed in R.C.2907.01, it may, under the facts of a particular case, be considered an erogenous zone. See State v. Beachy (Sept. 3, 2002), Stark App. No. 2001CA00339, 2002-Ohio-4714 citing State v. Lugo (Nov. 23, 1998), Licking App. No. 98CA00023 and State v. Wise (Jan. 29, 1993), Wood App. No. 91WD113; see, also, State v. Miesse (Aug. 18, 2000), Clark App. No. 99-CA-74 (noting that body parts that are not traditionally considered erogenous zones may, in some instances, be considered as such.).
 {¶ 27} Ball's convictions are not against the manifest weight of the evidence. The state presented evidence from which the jury could reasonably conclude that Ball engaged in sexual conduct, i.e. fellatio, with R. W., knowing that she was 13 years of age or older but less than 16 years old, or was reckless in that regard. The jury could also have reasonably concluded that Ball had sexual contact with R. W. or that he caused her to have sexual contact with him, through the use of force, when he pushed her head down to his penis causing his penis to touch her mouth. R. W. testified about an incident that occurred with Ball when they were sitting in his car inside his garage. She testified that Ball *Page 13 
"started rubbing me and stuff" and then asked her "to give him a — oral sex." She testified that "at first I was like okay, and then I was like, no, I don't want to do that and then he just kind of pushed my head down there" toward his exposed penis with his hands. When asked if she protested and resisted, she said yes. She stated that he pushed her head as she said "no, no, don't, I don't — you know, I don't want to do this." She testified that his penis entered her mouth. Then she finally just told him no and then he let up. She testified that Ball knew she was only 15 years old because she told him. R. W.'s testimony supports Ball's conviction for unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), as well as his conviction for gross sexual imposition, in violation of R.C. 2907.05(A)(1).
 {¶ 28} Because it relates to our disposition on this assignment of error, we also address an argument that Ball raises in his third assignment of error, where he argues that his convictions involving R. W. were allied offenses of similar import. In support of his argument that these offenses were committed with the same animus, Ball contends that the evidence presented at trial, if believed, showed that R. W. performed fellatio on Ball and that Ball "rubbed" her sexually. In response, the state argues that R. W.'s testimony was that she performed oral sex on Ball and that "he touched her in her sexual privates which she did not want which could be implied to be force." See Appellee's Brief at 8. However, a review of the indictment and the bill of particulars furnished by the state shows that all of the charges against Ball involving R. W. were based on the same conduct, i.e. forcible fellatio, and not any other type of sexual activity. Thus, *Page 14 
Ball's conviction for gross sexual imposition was premised on the act of fellatio and not any other type of sexual contact. Ball's conviction on this charge relates to him forcibly touching R. W.'s mouth with his penis and not to Ball "rubbing" R. W.
 {¶ 29} The jury could have also reasonably concluded that Ball had sexual contact with L. C, who was less than 13 years of age, when he had her perform fellatio on him and he touched her breasts. L. C, who was 14 years old at the time of trial, testified about an incident that occurred when she was 12 years old. She testified that she and J. B. went to Ball's garage on their way home from the fair to ask him for cigarettes. In return for the cigarettes, J. B. performed oral sex on him, while Ball kissed L. C. and touched her breasts. Then L. C. gave him oral sex. J. B. also testified about the incident. Their testimony supports Ball's conviction for gross sexual imposition, in violation of R.C. 2907.05(A)(4).
 {¶ 30} Finally, the jury could have reasonably concluded that Ball engaged in sexual conduct, i.e. vaginal intercourse and fellatio, with F. W., knowing that she was 13 years of age or older but less than 16 years of age, or was reckless in that regard, and that Ball was 10 or more years older than F. W. at the time. F. W. testified that when she was approximately 13 to 14 years old and Ball was approximately 26 years old, they had a year-long relationship, during which they engaged in sexual intercourse and fellatio. The acts occurred either in Ball's garage or at her house. Her testimony supports Ball's conviction for unlawful sexual conduct with a minor, in violation of R.C.2907.04(A)(B)(3). *Page 15 
 {¶ 31} Ball asserts that the evidence presented at trial was generally unbelievable, arguing that it is incredible to believe that Ball would have given the alleged victims cigarettes in exchange for oral sex and that he could have continued the pattern of sexual misconduct for a period of several years without any of the victims coming forward. Ball also argues that the victims' testimony was so inconsistent and lacking in credibility that no reasonable juror could believe the victims' version of the incidents. Specifically, Ball argues that S. S. was not a credible witness because she was a convicted felon who was serving time in prison at the time of trial, and she hoped to receive judicial release if she cooperated in this case. Ball also argues that R. W's trial testimony was contrary to a statement she provided to investigators concerning the length of time his penis was in her mouth and whether he ejaculated. Ball claims that L. C.'s version of events differed from that of J. B., even though Ball allegedly committed sexual acts with the girls at the same time. Ball also argues that F. W.'s trial testimony was inconsistent with her statement to investigators as to the dates of the alleged acts as well as her age. He contends such discrepancies undermine the victims' credibility and weigh heavily against the convictions. Finally, Ball contends the contradictory nature of the victims' testimony is evidenced by the fact that the jury was only able to reach a verdict on four of the counts involving only three of the victims.
 {¶ 32} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The jury heard testimony *Page 16 
from several witnesses about various sexual misconduct that in some instances occurred several years ago when the victims were children. Specifically, R. W. and F. W. both testified about sexual conduct that occurred in 1998, when R. W. was only 15 years old and F. W. was approximately 13 to 14 years old; L. C, who was only 14 years old at the time of trial, testified about sexual conduct that occurred when she only 12 years old. Due to the nature of the misconduct, the ages of the victims, and the passage of time, the jury could have reasonably believed the victims despite inconsistencies concerning details of the sexual acts, the sequence of events, and specific dates.
 {¶ 33} Furthermore, Ball pointed out the inconsistencies in the victims' testimony and attacked their credibility before the jury. The jury evaluated the weight and credibility of each witness and was free to accept or reject any and all of the evidence offered by the prosecution. While R. W.'s trial testimony differed from her written statement to investigators, she testified about stressful events that had recently occurred that would help explain her inconsistent recollection of the events. She testified that her boyfriend had been murdered, she had lost a baby, and she was involved in a custody dispute with her husband. Moreover, she told the jury that she had tried to forget the events involving Ball. Concerning the alleged inconsistencies between L. C. and J. B.'s testimony, both testified that they gave Ball oral sex in return for cigarettes on a couple of occasions. Again, given the nature of the sexual activity and their relative age, as well as the fact that the conduct may have occurred on multiple occasions, J. B. and L. C. could have reasonably remembered the events differently. The jury was free to *Page 17 
believe or disbelieve either version of events or to reconcile any inconsistencies. Finally, concerning S. S., the jury was aware of her criminal record and was free to reject her testimony as self-serving; indeed, the jury did not convict Ball of the sexual conduct relating to her testimony.
 {¶ 34} Consistency among verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.State v. Adams (1978), 53 Ohio St.2d 223, 228, 374 N.E.2d 137, vacated in part on other grounds, 439 U.S. 811, 99 S.Ct. 69, 58 L.Ed.2d 103. Each count of a multi-count indictment is independent of all other counts, and "an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." State v. Lovejoy (1997),79 Ohio St.3d 440, 683 N.E.2d 1112, paragraph one of the syllabus, citingBrowning v. State (1929), 120 Ohio St. 62, 165 N.E. 566; State v.Brown (1984), 12 Ohio St.3d 147, 465 N.E.2d 889; State v. Hicks (1989),43 Ohio St. 3d 72, 538 N.E.2d 1030. "[T]he sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." Lovejoy, supra, at 444. While the jury's verdicts may appear to be inconsistent in some respects, Ball's convictions are reasonably supported by the evidence. We cannot speculate about why the jury was unable to reach a verdict on some of the charges, particularly where many of the charges involved different victims, occurred years apart, and were entirely unrelated to the other charges. *Page 18 
 {¶ 35} The jury is in the best position to determine the credibility of each witness by taking into account inconsistencies, as well as witnesses' manner and demeanor. Because the victims' testimony was not so incredible as to be totally unbelievable, we cannot conclude the jury lost its way.
 {¶ 36} Accordingly, we overrule Ball's first assignment of error.
 IV. Consecutive Sentences {¶ 37} In his second assignment of error, Ball contends the trial court erred when it sentenced him to serve consecutive sentences in violation of his constitutional rights and the United States Supreme Court's decision in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. He also contends that subsequent to the Supreme Court of Ohio's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, which struck down various portions of Ohio's felony sentencing law, the trial court's decision to order those sentences to be served consecutively violates his due process rights, as well as the safeguards against ex post facto laws. We disagree.
 {¶ 38} Foster was decided on February 27, 2006. The trial court conducted Ball's sentencing hearing on January 17, 2007. Ball could have raised this argument during that hearing so that the trial court could have addressed it. His failure to do so constitutes a forfeiture of the issue. See State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642,873 N.E.2d 306, at ¶ 21-23.
 {¶ 39} Nonetheless, had Ball preserved the issue for appeal, we would reject his claim on the merits. Plain error does not exist unless it can be said that, but for the error, the outcome would clearly have been different. State v. *Page 19 Moreland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894. Because Ball cannot establish "but for" the purported Blakely error he would have received a more lenient sentence, no plain error occurred.Payne at ¶ 25. Foster did not adopt the proposed remedy of mandatory minimum sentences; rather, it returned to a system of judicial discretion that would allow the sentencing court to consider all relevant factors and impose any sentence within the statutory range. Id. at ¶ 26.
 {¶ 40} Furthermore, this court has considered numerous times the same ex post facto and due process arguments raised by Ball. Each time we have addressed these arguments, we have rejected them. See State v.Henry, Pickaway App. No. 06CA8, 2006-Ohio-6942; State v. Grimes, Washington App. No. 06CA17, 2006-Ohio-6360; State v. Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889; State v. Dobbins, Washington App. No. 07CA6, 2007-Ohio-4923; State v. Bruce, Washington App. No. 06CA40,2007-Ohio-1938; State v. Thompson, Washington App. Nos. 06CA43 and 06CA50, 2007-Ohio-2724; State v. Cross, Washington App. No. 06CA47,2007-Ohio-2252. Other Ohio appellate courts have rejected the same ex post facto and due process arguments as well. See State v.Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715; State v. Lowe, Franklin App. No. 06AP673, 2007-Ohio-504; State v. Shield, Shelby App. No. 90616, 2007-Ohio-462; State v. Hildreth, Loraine App. No. 06CA8879,2006-Ohio-5058; State v. Thrasher, Wood App. No. WD06047,2007-Ohio-2838; State v. Bengal, Lake App. No. 2006L123, 2007-Ohio-2691. While recognizing Ball's need to preserve these issues for further review, we see no reason to revisit or *Page 20 
reject our prior decisions. Therefore, Ball's second assignment of error is overruled.
 V. Allied Offenses of Similar Import {¶ 41} In his third assignment of error, Ball contends that the trial court erred in sentencing him both on his conviction for unlawful sexual conduct with a minor and his conviction for gross sexual imposition for the conduct relating to R. W. Ball contends the offense of gross sexual imposition is an allied offense of similar import to the charge of unlawful sexual conduct with a minor, and, accordingly, the trial court erred by failing to merge the convictions on both charges.
 {¶ 42} R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 43} In State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, the Ohio Supreme Court established the analysis for determining whether the multiple-count statute prohibits separate punishment for two offenses. The first step is to determine whether the offenses are "allied offenses of similar import" within the meaning of R.C. 2941.25. Two offenses are "allied" if the elements of the crimes "`correspond to such a degree that the commission of one crime will *Page 21 
result in the commission of the other.'" Id. at 636, 710 N.E.2d 699, quoting State v. Jones (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80. If not, the court's inquiry ends. The crimes are considered offenses of dissimilar import and the defendant may be convicted (i.e., found guilty and punished) for both. Rance at 636, 710 N.E.2d 699, citing R.C.2941.25(B). If the elements do correspond in the manner described, the court must proceed to a second step. The defendant's conduct is reviewed to determine if the crimes were committed separately or with a separate animus for each crime; if so, the defendant may be convicted of both. See Jones, 78 Ohio St.3d at 14, 676 N.E.2d 80. Because the first step of the analysis is dispositive here, we do not address the second step.
 {¶ 44} Comparing the elements of unlawful sexual conduct with a minor under R.C. 2907.04(A) and gross sexual imposition under R.C.2907.05(A)(1) in the abstract, we find that commission of the one offense does not automatically entail commission of the other. Specifically, a conviction for gross sexual imposition requires proof that the defendant engage in sexual contact with another when the offender purposely compels the other person to submit by force or threat of force. R.C. 2907.05(A)(1). In contrast, a conviction for unlawful sexual conduct with a minor does not require any force or threat of force, but requires proof that the defendant engage in sexual conduct with another when the offender knows that the other person is 13 years of age or older but less than sixteen years of age or the offender is reckless in that regard. R.C. 2907.04(A). *Page 22 
 {¶ 45} Because each offense requires proof of an element that the other does not, they cannot be allied offenses of similar import. Ball's third assignment of error is overruled.
 VI. Ineffective Assistance of Counsel {¶ 46} In his fourth assignment of error, Ball contends that trial counsel rendered ineffective assistance of counsel by failing to argue that the offense of unlawful sexual conduct with a minor and gross sexual imposition are allied offenses of similar import. In his fifth assignment of error, Ball contends that trial counsel was ineffective when he failed to object to hearsay evidence, failed to present a defense, and failed to make any argument in mitigation of Ball's sentence.
 {¶ 47} In order to prevail on a claim of ineffective assistance of counsel, Ball must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. State v. Smith (2000), 89 Ohio St.3d 323,327, 731 N.E.2d 645, citing Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To establish prejudice, Ball must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. State v. White (1998),82 Ohio St.3d 16, 23, 693 N.E.2d 772; Bradley, at paragraph three of the syllabus. *Page 23 
 {¶ 48} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 {¶ 49} We have already concluded in Ball's third assignment of error that his convictions involving R. W. are not allied offenses. Accordingly, Ball's trial counsel was not deficient for failing to make that argument.
 {¶ 50} Ball also contends that trial counsel was ineffective in failing to object to hearsay testimony from Jessica Lyons and Ron Dane and in eliciting hearsay testimony from Jessica on cross-examination. Evid.R. 801 (C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible unless the evidence falls within one of the recognized exceptions. Evid.R. 802.
 {¶ 51} Ball does not specify the statements from Jessica Lyons' direct testimony that he finds objectionable, but merely points to her entire testimony. Jessica generally testified that her cousin, J. B., told her that she and L. C. had performed oral sex on Ball as a way of "working off" the cigarettes. Ball contends Jessica's testimony was highly prejudicial because Ball was ultimately convicted of an offense involving L. C. However, both J. B. and L. C. testified about these acts, and J. B. testified that she told Jessica about her activities with Ball. *Page 24 
Furthermore, trial counsel cross-examined Jessica regarding inconsistencies between J. B.'s alleged statements to Jessica and J. B.'s testimony, and the jury did not convict Ball of conduct committed against J. B. Ball cannot show that trial counsel's failure to object to Jessica's testimony was so unreasonable and prejudicial as to deny him a fair trial. Ball cannot demonstrate that were it not for counsel's failure to object to Jessica's testimony that he would not have been convicted of offenses involving L.C.; they jury could have reasonably believed L. C.'s testimony regardless of Jessica's testimony.
 {¶ 52} Ball also fails to specify the statements from Jessica's cross-examination that he finds objectionable, but rather cites to a page in the trial transcript. Based on our review of that page in the transcript, it appears that Ball takes issue with the following exchange:
Q You didn't review your testimony with anyone?
A No.
Q You just came up with on your own that this was a hand job and blow job?
A I had — [J. B.] told me when she told me, that was the only time that this has been discussed other than when she told me. I told Linda, wrote out the statement, that's it. No other discussions.
 {¶ 53} A review of Jessica's testimony on cross-examination shows that trial counsel attempted to show inconsistencies between J. B.'s testimony and her alleged statements to Jessica, as well as inconsistencies between Jessica's trial testimony and the written statement Jessica provided to investigators. "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of *Page 25 
counsel." State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235,818 N.E.2d 229, at ¶ 146. Within its context, this particular exchange related to inconsistencies concerning specific sexual acts. Jessica testified that J. B. told her that she had given Ball a "hand job," yet J. B. did not testify about such an incident. Moreover, Jessica wrote in her statement to investigators that J. B. had told her about "sexual abuse," but she did not specifically mention "hand job" or "blow job" in her statement. As a result, trial counsel's efforts to point out inconsistencies was reasonable. Furthermore, because they were cousins and J. B. had allegedly confided in Jessica originally, it was reasonable for trial counsel to elicit testimony from Jessica about any conversations she may have had with J. B. or others about her testimony. Finally, Ball cannot demonstrate that he was prejudiced by counsel's cross-examination of Jessica because Ball was not convicted of any conduct relating to J. B., and L. C. specifically testified about the acts involving her.
 {¶ 54} Finally, Ball argues that trial counsel was ineffective in failing to object to hearsay evidence from Ron Dane, the state's chief investigator on the case, and cites to a page in the transcript. Based on our review of this page, it appears Ball takes issue with the following testimony:
Q Okay. What I'm saying is I'm talking about Jessica Lyons. Okay. Did she tell you that somebody had spoke to her about these things?
A [J. B.]
Q Did she tell you what she then in turn did?
A She said she went to [J. B.'s] mother.
 Q Is that your understanding how we found out about it? *Page 26 
A That's how Logan Police Department found out about it.
 {¶ 55} A review of this exchange suggests that Ron Dane's testimony concerning statements Jessica made during the course of his investigation was offered to show how his investigation was initiated. The testimony explained Jessica's actions; she told J. B.'s mother, who in turn notified the Logan Police Department. His testimony was not offered to prove the truth of J. B.'s statements, but rather how the prosecutor's office became involved in the case. More importantly, regardless of its purpose, the outcome of the trial did not turn on the admission of this evidence, which is far too innocuous to have tainted the trial.
 {¶ 56} Next, Ball contends that trial counsel was ineffective in failing to present a defense despite the fact that Ball's first trial attorney had previously issued thirteen subpoenas in preparation for Ball's first trial date that was ultimately continued. "`Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'"State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 143, citing State v. Treesh, 90 Ohio St.3d 460, 490, 2001-Ohio-4. The record does not indicate Ball identified any witnesses who could have provided favorable testimony on his behalf. Absent any such evidence, we cannot say that trial counsel's decision not to call any witnesses was deficient.
 {¶ 57} Finally, Ball contends that trial counsel was ineffective in failing to enumerate or discuss any of the sentencing factors set forth in R.C. 2929.14 at Ball's sentencing hearing. However, prior to imposing its sentence, the trial court *Page 27 
reviewed relevant facts from the presentence investigation report and discussed sentencing factors. Thereafter, trial counsel referenced the presentence investigation report, as well as the psychological evaluation that was conducted on Ball. He also noted that Ball did not have a prior felony conviction and specifically requested a medium range sentence on each count. Ball fails to specify what additional information counsel could have placed before the court for sentencing. The sentence imposed was well within the trial court's discretion. Ball fails to demonstrate that but for trial counsel's performance, he would have received a more lenient sentence. We overrule Ball's fifth assignment of error.
 JUDGMENT AFFIRMED. *Page 28 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Kline, J. McFarland, J.: Concur in Judgment and Opinion. *Page 1